IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MOLOKAI VETERANS CARING FOR VETERANS, a Hawaii non-profit organization, et a., Plaintiffs, vs. COUNTY OF MAUI, ET AL., Defendants. | CIVIL NO. 10-00538 LEK-RLP |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS'
MOTION TO DISMISS AMENDED COMPLAINT FOR INJUNCTIVE AND
DECLARATORY RELIEF AND DAMAGES FILED NOVEMBER 24, 2010,
OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

On January 4, 2011, Defendants the County of Maui ("the County"), Charmaine Tavares, Mayor of County of Maui, Roy Silva, Executive Assistant to Mayor Tavares, Mahina Martin, County Community Relations and Communications Director, the Department of Water Supply, County of Maui ("DWS"), Jeffrey K. Eng, Director of DWS, the Board of Water Supply, County of Maui ("BWS"), the Planning Department, County of Maui ("Planning Department"), and Clayton Yoshida, Administrator, Planning Department (collectively "Defendants"), filed the instant Motion to Dismiss Amended Complaint for Injunctive and Declaratory Relief and Damages Filed November 24, 2010, or, in the Alternative, for a More Definite Statement ("Motion"). Plaintiff Molokai Veterans Caring for

Veterans ("MVCV") and the individual plaintiffs[1] (collectively "Plaintiffs") filed their memorandum in opposition on March 14, 2011, and Defendants filed their reply on March 21, 2011. This matter came on for hearing on April 4, 2011. Appearing on behalf of Defendants were Jane Lovell, Esq., and Patrick Wong, Esq., and appearing on behalf of Plaintiffs was Susan Halevi, Esq. Also present were Plaintiff Hilarion H. Helm and several of the other individual plaintiffs. After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Defendants' Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

## BACKGROUND

### I.    Factual Background

MVCV is a Hawai`i non-profit corporation that veterans formed in 2001. It is "dedicated to caring for veterans of the United States Armed Forces." [Amended Complaint for Injunctive and Declaratory Relief and Damages ("Amended Complaint"), filed 11/24/10 (dkt. no. 5), at ¶¶ 14, 27.] MVCV provides various

---

[1] The individual plaintiffs are Maximo Agan, Luella Albino, as Personal Representative for Donald Albino (Deceased), Franklin Augustiro, Benjamin Bali, Patsy Bird, George Denison, Jesse Dudoit, Richard Ellertsen, Wendall Defreitas, Manuel Garcia, Melvin Hanohano, Hilarion H. Helm, Terrace Kekahuna, Moana Keohuloa, as Personal Representative for John Keohuloa (Deceased), Adolphus Lankford, John Logan, Cumins Mahoe, Frank Maniago, Robert McKee, Kelson K. Poepoe, Kaipo Ramos, Wayne Rawlins, Raymond Sambueno, Irene C. Tancayo, as Personal Representative for Michael Tancayo (Deceased), and Laslo Toth.

services, including physician, psychologist, psychiatrist, and
social services benefit counseling services, to approximately 200
veterans per week.  MVCV "operates out of a small rented
storefront that holds only a few people comfortably."  [Id. at ¶
27.]  MVCV acquired a 16,182 square foot property on Kaunakakai
Place on the island of Molokai ("the Property").  Molokai Ranch
formerly used the Property, but the structures on the Property
have been demolished.  Adjacent to the Property are various
businesses, restaurants, offices, civic clubs, and homes.  In
2007, MVCV received a $250,000 grant from the State of Hawai`i
for the construction of a Veterans Center on the Property.  MVCV
plans to build a 1,890 square foot building with a 1,100 square
foot covered lanai.  [Id. at ¶¶ 29-31.]  The instant case arises
from MVCV's attempts to secure a building permit from the County
for the development of the Veterans Center.

Shortly after receiving the state grant, MVCV consulted
with the Planning Department to determine what permits would be
required to develop the Veterans Center.  According to the
Amended Complaint, Nancy McPherson, a planning assistant, told
MVCV that a public hearing was not necessary because the expected
cost of the structure was below $125,000 and, based on the zoning
of the Property, all MVCV had to do was obtain a Special
Management Area ("SMA") Permit and complete the Molokai Planning
Commission's required paperwork.  MVCV submitted its SMA Permit

3

application in November 2007.  [Id. at ¶ 34.]

In September or October 2008, McPherson informed MVCV that it needed to obtain an environmental impact exemption from the Department of Defense ("DoD").  Plaintiffs, however, allege that DoD subsequently informed MVCV that it did not need the exemption.  In October 2008, Defendant Clayton Yoshida, a Planning Department administrator, informed MVCV that it had to apply for a zoning change.  Defendant Yoshida, however, did not send MVCV written notice of the requirement until two months later.  [Id. at ¶¶ 35-36.]  Plaintiffs allege that, although the zoning change "appeared arbitrary and unreasonable," they "paid over $1,000 for a survey and a rezoning application."  [Id. at ¶ 37.]  The County, however, amended its zoning code in 2010, rendering it unnecessary for MVCV to seek rezoning of the Property.  [Id.]

As part of the SMA application process, Defendant Jeffrey K. Eng, Director of DWS, sent Nancy McPherson a letter dated May 4, 2009 which, inter alia, represented that there is an eight-inch waterline serving the Property.  [Id., Exh. 2 at 1.]  Plaintiffs relied on this representation in their plans for the Veterans Center.  [Amended Complaint at ¶ 38.]

In October 2009, MVCV submitted its plans for a building permit to the County of Maui Building Department ("Building Department").  The Planning Department approved MVCV's

4

SMA Minor Use Permit on December 2, 2009. One of the conditions of approval stated that an eight-inch water main on the east side of Kaunakakai Place serviced the Property. In April 2010, however, DWS produced a letter dated 2006 regarding the installation of a water meter on the Property. The letter noted that an upgrade would be required for future development of the Property, but the letter did not specify the type of upgrade. Apparently, when it produced the letter, DWS disclosed that the water main serving the Property was only a four-inch line, not an eight-inch line as previously represented. The eight-inch line terminates approximately 463 feet north of the Property. [Id. at ¶¶ 39-41.]

Plaintiffs state that the County of Maui Fire Department ("Fire Department") has determined that the water service to the Property is sufficient for fire protection, but DWS has concluded that there is not enough water. The Amended Complaint acknowledges that the Fire Department's primary concern in such matters is water flow and fire protection, whereas DWS's concern is the quality of water service for all users while a water line is being used to fight a blaze. DWS concluded that there is not sufficient water flow for the Property because fighting a fire on the Property may temporarily disrupt the quality of service to other residents because of sediment producing brown water and the possible pulling of sewage water

5

into the system.  Plaintiffs, however, contend that the same concerns exist as to fire protection on all of the other developed properties on the subject water line.  [Id. at ¶¶ 44-46.]

Plaintiffs also contend that the Fire Department has tested the water flow to the Property using the existing hydrants and confirmed its initial conclusion that there is a sufficient water supply for fire protection.  The Amended Complaint states that DWS uses the Insurance Service Office Guidelines ("ISO") to test whether there is adequate water flow for fire protection. Plaintiffs contend that large portions of the existing water system in the County do not meet the ISO standards, and the County has not budgeted sufficient funds to bring the system into compliance with the ISO standards.  [Id. at ¶¶ 54-56.]  Further, the Fire Department determined that, under the ISO standard, there was sufficient flow for fire protection on the Property. The Fire Department tested the hydrant that it would actually use for fire protection on the Property.  According to Plaintiffs, when DWS ran its tests, it used different hydrants, ones that would perform the worst because of their positions on the water line.  The First Amended Complaint acknowledges that DWS used those hydrants to test the effect that fighting a fire on the Property would have on the water quality to other customers on the line.  [Id. at ¶¶ 59-61.]

Plaintiffs argue that the County has an illegal policy
of conditioning the issuance of building permits on individuals'
payment for infrastructure upgrades that are unrelated to the
actual needs of their properties.  According to Plaintiffs, at
least one County council member has publicly recognized that MVCV
should not be required to pay for an upgrade to a County water
line.  [Id. at ¶ 57, Exh. 5 (County Water Resource Comm. Minutes)
at 25.]  Due to public outrage over this policy, the County
Council recently amended the Maui County Code to require partial
reimbursement for certain required upgrades.  Plaintiffs,
however, contend that the amended provision is still arbitrary
and unreasonable because some property owners are still forced to
bear the entire cost of improving water lines that benefit
everyone on the line.  [Amended Complaint at ¶ 58.]  Plaintiffs
also point out that the County Corporation Counsel has determined
that DWS's practice of requiring an owner of a vacant lot in a
previously approved subdivision to pay for upgrades to the water
service for the entire subdivision as a condition of receiving a
water meter is a retrospective application of new standards
and/or requirements in violation of Haw. Rev. Stat. § 1-3.  [Id.
at ¶ 63, Exh. 10 (mem. dated 3/29/05 to George Y. Tengan,
Director, Water Supply, to Ed Kushi, Jr., Deputy Corp. Counsel).]

DWS has informed MVCV that it must replace the existing
four-inch water main on the east side of Kaunakakai Place, extend

the eight-inch water main, and add a fire hydrant within 125 feet of the Property in order to obtain DWS's approval for the building permit application. MVCV requested a waiver of this requirement, but Herbert Chang, a DWS engineering program manager, denied the request. [Amended Complaint at ¶ 50, Exh. 6 (ltr. dated 5/11/10 to Arthur Parr, MVCV's architect, from Herbert Chang, DWS).] The Amended Complaint states that the estimated cost of such improvement is $38,000. Further, Plaintiffs state that the County already had plans to remove the existing water line on the east side of the street and install a new four-inch water line on the west side of the street. Thus, Plaintiffs apparently argue that the requirement that MVCV install an eight-inch line was arbitrary and unreasonable because the County would at some point demolish the new line and replace it with another four-inch line on the opposite side of the street. Plaintiffs also speculate that DWS's requirement that MVCV upgrade the water services to the Property was somehow intended to overcome public opposition on Molokai to the construction of a ferry pier. [Amended Complaint at ¶¶ 49, 51.]

By letter dated June 9, 2010, MVCV attempted to take an appeal to BWS from Chang's May 11, 2010 letter describing the upgrade requirements to Defendant the County of Maui Board of Water Supply ("BWS"). By letter dated July 22, 2010, Defendant Jeffrey K. Eng, DWS Director, returned MVCV's appeal documents,

stating that Chang was not the director of DWS and that an official response to the request for a waiver would follow. Eng therefore stated that BWS had no jurisdiction to review MVCV's appeal. [Id. at ¶ 52, Exh. 7 (ltr. to Larry Helm).] By letter dated July 23, 2010, Eng affirmed Chang's decision in the May 11, 2010 letter and advised MVCV that it could appeal the July 23, 2010 decision to the BWS. MVCV re-filed their appeal and, at the filing of the Amended Complaint, the appeal was still pending. [Amended Complaint at ¶ 53, Exh. 8 (ltr. to Larry Helm).] Plaintiffs note that Jeffrey S. Hunt, director of the Planning Department, recommended that DWS: 1) exercise its discretion and grant an exception to the water standards; and 2) lift its hold on the building permit for the Veterans Center. [Amended Complaint at ¶ 65, Exh. 11 (mem. dated 4/21/10 to Mr. Jeffrey K. Eng, Director from Jeffrey S. Hunt).]

Plaintiffs argue that, while the County has withheld the building permit for the Veterans Center, dozens of other property owners have received building permits. Plaintiffs believe that a 3,500 square foot home was built within the last year on the same four-inch water line servicing the Property. The proposed Veterans Center will only encompass 1,890 square feet. [Amended Complaint at ¶ 66.]

After all departments except DWS had approved MVCV's building permit, MVCV planned to travel to the Island of Maui to

hold a protest in front of the County Building. Plaintiffs
allege that Defendant Charmaine Tavares, who was the Mayor of the
County at that time ("Mayor Tavares"), asked Paul Laub, president
of the Maui County Veterans Council ("Veterans Council"), to stop
MVCV from protesting. Laub refused. According to the Amended
Complaint, Mayor Tavares called Plaintiff Hilarion H. Helm at his
home on June 28, 2010 and told him that she had worked out a
solution with the Veterans Council but that she needed to discuss
the matter with some of the County department heads. She stated
that either she or Defendant Roy Silva, her executive assistant,
would get back to him the next day. [Id. at ¶¶ 68-70.]

Mayor Tavares called Plaintiff Helm the next night at
9:00 p.m., after she learned of an e-mail that Helm had written
to his psychologist and doctor describing MVCV's ordeal with the
building permit process. He wrote, inter alia, that it caused
him to have flashbacks of Vietnam, and that County officials had
committed treason. Plaintiff Helm wrote that he was anxious
about what might happen at the protest. During the June 29, 2010
call, Mayor Tavares allegedly threatened to withhold the building
permit unless Plaintiff Helm wrote a letter of apology. She also
warned him that their protest would make a lot people angry, and
she demanded to speak to his psychologist and physician. Under
pressure from Mayor Tavares, Plaintiff Helm agreed. [Id. at ¶¶
71-73.]

The day before the scheduled protest, Mayor Tavares spoke with Plaintiff Helm's physician, Dr. David Hafermann, who is also a veteran and a member of MVCV. Mayor Tavares reiterated her demand for an apology and stated that the planned protest would not help MVCV's cause. She even warned that, if MVCV went through with the protest, they could lose everything and, if MVCV sued the County, it would be harassment. On the morning of July 1, 2010, however, Plaintiff Helm, Dr. Hafermann, and others, including several of the plaintiffs in the instant case, arrived in Lahaina for the protest. Plaintiffs state that Mayor Tavares' office falsely notified the media that the County and MVCV had reached a settlement. Plaintiffs argue that she did so to prevent the media from covering the protest. Defendant Silva and Defendant Mahina Martin, County Community Relations and Communications Director, representing Mayor Tavares, allegedly told MVCV to stay away from the County Building. They told MVCV that they could only meet with MVCV at the Maui County Veterans Center. At the Maui Veterans Center, Defendants Silva and Martin allegedly tried to prevent the veterans from leaving. Plaintiff Helm and all but three of the veterans were undeterred and continued on to the County Building in Wailuku. [Id. at ¶¶ 76-80.]

While the protest at the County Building took place, Defendants Silva and Martin met with MVCV representatives,

Dr. Hafermann, Plaintiff Kelson Poepoe, and Arthur Parr, MVCV's architect. Defendant Silva allegedly asked them to persuade Plaintiff Helm to "minimize" the protest, and allegedly made veiled threats. For example, Defendant Silva "wonder[ed] aloud, if the dispute became more 'public' and went into 'attack mode,' where [they] would go from there." [Id. at ¶ 81.] According to Plaintiffs, Defendant Silva represented during this meeting that the only way DWS would approve MVCV's building permit application was if the County Council voted to transfer DWS's decision-making authority for fire protection to the Fire Department. Silva stated that they did not believe any council member would vote against the measure, but he did not tell the veterans that this proposal had already been defeated six times in the past two years. In the alternative, Defendant Silva proposed that the Veterans Center's water line be included in the construction of a twelve-inch water line that was part of the harbor improvement project. [Id. at ¶¶ 82-83.]

Because they did not realize that the proposal to transfer DWS's fire protection authority was unlikely to pass, Dr. Hafermann, Plaintiff Poepoe, and Mr. Parr agreed to that plan. Mayor Tavares' office again announced a settlement, and Plaintiff Helm confirmed that there was an agreement in principle. MVCV consulted an attorney after it received the written agreement from Mayor Tavares' office. MVCV refused to

sign the agreement because it provided that: 1) MVCV could build the Veterans Center but could not occupy it until either DWS no longer had fire protection authority or the County installed an eight-inch water line; and 2) MVCV was to indemnify the County from any suit over the County's refusal to allow MVCV occupy the Veterans Center. Further, there was no assurance that the County would not create additional obstacles in the future. [Id. at ¶¶ 84-85.]

On August 3, 2010, the County Council Water Resources Committee rejected the proposal to transfer DWS's fire protection authority to the Fire Department. Plaintiffs contend that this is evidence that the deal which the Defendants Silva and Martin, on behalf of the Mayor's Office, offered MVCV was a "sham" designed to stop MVCV's protest because it would have been detrimental to Mayor Tavares' re-election campaign. [Id. at ¶ 86.] Further, in spite of various assurances from the Mayor's Office, as of the filing of the Amended Complaint, the County had not begun construction of an additional water line on the west side of Kaunakakai Place. [Id. at ¶ 87.]

Plaintiffs allege that, as a result of the ordeal regarding the building permit, they have suffered various severe physical, mental, and emotional consequences, including aggravation of the post-traumatic stress disorder ("PTSD") which they all suffer. Plaintiffs therefore have increased needs for

counseling, medical care, and medication.  Plaintiffs state that many of MVCV's members have died waiting for the Veterans Center to open and that other members are haunted by the deaths of their colleagues.  They wonder if they too will die before MVCV receives its building permit.  The Amended Complaint states that Plaintiff Helm was admitted to the emergency room of a local hospital on Election Day 2010 as a result of an apparent anxiety attack caused by his fear of continual targeting by Mayor Tavares if she won re-election.  [Id. at ¶¶ 88-91.]

The Amended Complaint alleges the following claims: a 42 U.S.C. § 1983 claim for the deprivation of Plaintiffs' First Amendment and Fourteenth Amendment rights to assemble and speak on matters of political concern ("Count I"); a § 1983 claim for deprivation of Plaintiffs' Fourteenth Amendment right to due process ("Count II"); a claim against the County for failure to train and supervision and for maintenance of unlawful customs and policies ("Count III"); intentional or negligent infliction of emotional distress ("Count IV"); negligence ("Count V"); a § 1983 claim for deprivation of Plaintiffs' rights to procedural and substantive due process ("Count VI"); a § 1983 clam for deprivation of Plaintiffs' equal protection rights ("Count VII"); a claim for imposition of illegal tax and retrospective application of law ("Count VIII"); a claim for injunctive relief ("Count IX"); and a claim for declaratory relief ("Count X").  In

addition to injunctive and declaratory relief, Plaintiffs seek:
"general, special, consequential, continuing and/or per se
damages"; prejudgment interest; punitive damages against the
individual Defendants; attorneys' fees and costs; and any other
appropriate relief. [<u>Id.</u> at pgs. 45-46.]

## I.  **Motion to Dismiss**

In the instant Motion, Defendants argue that, even
taking the factual allegations of the Amended Complaint as true,
it does not state a claim upon which relief may be granted.[2]  As
to Plaintiffs' § 1983 claim based on First Amendment violations,
Defendants argue that Plaintiffs have failed to allege that
either: 1) Defendants Tavares', Silva's, and Martin's conduct
deterred or chilled Plaintiffs' exercise of their First Amendment
rights and that such deterrence was a substantial or motivating
factor in the conduct; or 2) those Defendants' conduct would have
chilled or silenced a person of ordinary firmness from future
exercise of his First Amendment rights.  Defendants contend that
Plaintiffs fail to state a § 1983 claim based on equal protection
violations because they have not alleged discrimination based on
a suspect classification, and therefore the rational basis
standard applies.  Defendants assert that there was a rational

_____

[2] Plaintiffs have expressed that they will seek leave to
amend various portions of their Amended Complaint.  The Court has
dismissed those claims and therefore will not address the
portions of Defendants' Motion addressing those claims.  <u>See</u>
<i>infra</i> Discussion, Section II.

15

basis for DWS to withhold their approval of MVCV's building permit application unless MVCV agreed to complete a necessary upgrade in the water system. Defendants also argue that Plaintiffs' § 1983 claim against the County fails because, first, Plaintiffs have not sufficiently pled a constitutional violation, and second, respondeat superior liability does not apply in § 1983 claims. The actions alleged in the Amended Complaint are not pervasive enough to establish a longstanding County custom or policy. Finally, to the extent that Plaintiffs sufficiently alleged any constitutional violations, Defendants argue that all of the individual defendants have qualified immunity.

Defendants also argue that this Court cannot adjudicate any claims that implicate the pending appeal to the BWS and that the Court should defer to that proceeding.

As to Plaintiffs' claims for injunctive and declaratory relief regarding the alleged unconstitutional or illegal conduct in this case, Defendants argue that, to the extent that any of Plaintiffs' claims survive the instant Motion, injunctive relief and declaratory relief are remedies for the underlying claims, not independent substantive claims. Defendants also argue that the Court should strike Plaintiffs' claims seeking punitive damages against the County because punitive damages are not available from a municipality in either the § 1983 claims or the state law claims.

If the Court dismisses all of Plaintiffs' federal claims, Defendants urge the Court to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. In the alternative, Defendants argue that Plaintiffs' claim for intentional infliction of emotional distress ("IIED") does not state a claim because the alleged actions of the individual defendants do not rise to the level of outrageous conduct required to establish an IIED claim under Hawai`i law. Plaintiffs' claim for negligent infliction of emotional distress ("NIED") also fails to state a claim because the actions of the individual defendants would not have caused a "'reasonable man, normally constituted,'" to be unable to cope with the mental stress caused by those actions. [Mem. in Supp. of Motion at 28 (quoting Rodrigues v. State, 52 Haw. 156, 173, 472 P.2d 509, 520 (1970)).]

Defendants contend that Plaintiffs' final state law claim, Count V, also fails to state a claim. It alleges negligence, but only with a conclusory allegation that Defendants Tavares, Silva, Martin, and Yoshida caused damage to Plaintiffs by negligently breaching their duties under the Maui County Charter and other applicable rules and ordinances. [Amended Complaint at ¶ 108.] Defendants contend that this is too vague to state a claim and that the Court should dismiss this claim. In the alternative, Defendants argue that the Court should order

Plaintiffs to file a more definite statement pursuant to Fed. R. Civ. P. 12(e).

## II. __Memorandum in Opposition__

Initially, Plaintiffs identify numerous areas in the Amended Complaint that they intend to amend. [Mem. in Opp. at 9-10, 12, 14, 17-18, 23.] The Court construes this offer to amend these claim as an admission that, as currently pled in the Amended Complaint, those claims fail to state a claim upon which relief can be granted.

Plaintiffs assert that their § 1983 claim based on First Amendment violations is sufficiently pled and that Defendants' attempts to stop their protest at the County Building was unconstitutional viewpoint discrimination. Plaintiffs also argue that Mayor Tavares' conduct during the June 29, 2010 telephone call to Plaintiff Helm was not justified in any way. Further, Plaintiffs emphasize that, even if the County arguably could have invoked legal grounds to deny MVCV's building permit application, it is still unconstitutional for the County to withhold the permit based on Plaintiffs' exercise of their First Amendment rights.

Plaintiffs argue that they have sufficiently pled an actionable § 1983 claim based on the violation of their equal protection rights. Plaintiffs contend that they have cited various examples of evidence that the stated reasons for the

denial of MVCV's building permit are mere pretext.  Plaintiffs

argue that the Amended Complaint sets forth a sufficient basis

for a claim that Defendants apply County regulations in an

arbitrary and unjustifiable way.

Plaintiffs also assert that they have sufficiently pled

a claim for municipal liability.  Plaintiffs argue that Mayor

Tavares', Defendant Silva's, and Defendant Martin's repeated

attempts to prevent or curtail Plaintiffs' protest may be

sufficiently pervasive to establish a County custom or policy.

Plaintiffs contend that whether or not their actions create a

custom or policy is not appropriate for determination at this

early stage of the case.  Plaintiffs also argue that they have

sufficiently pled their municipal liability claim in Count III

because Mayor Tavares had final policymaking authority on behalf

of the County.

Plaintiffs further argue that the individual defendants

are not entitled to qualified immunity.  Plaintiffs argue that a

reasonable person in Mayor Tavares', Defendant Silva's, or

Defendant Martin's position would have been aware that

interfering with a political protest was a violation of

Plaintiffs' constitutional rights.  Similarly, Plaintiffs contend

that it was clearly established that an individual has the right

to be free from intentional governmental retaliation based on

protected expression.  Plaintiffs note that Defendants have not

raised a qualified immunity defense for Plaintiffs' equal protection claims. Defendants merely argue that failing to ignore or waive applicable rules cannot be an equal protection violation. Plaintiffs argue that courts have rejected this claim. Plaintiffs emphasize that they have provided evidence of the County's longstanding custom, practice, and policy of enforcing its regulations in an arbitrary, discriminatory, and unfair manner. It is a well-established principle of law that this is unconstitutional. Plaintiffs therefore argue that the Court should reject Defendants' qualified immunity defense.

Plaintiffs argue that the pending BWS appeal will not address Plaintiffs' constitutional claims, which are outside of BWS's review powers. BWS can only review whether DWS's decision was: based on clear error of material fact, improper procedure, or error of law; an arbitrary or capricious application of the applicable rules and/or laws; or a clearly unwarranted abuse of discretion. Further, the individual Plaintiffs do not have any pending proceedings before the BWS. Plaintiffs also argue that their First Amendment claims are unrelated to the BWS appeal and, although there is some overlap with the equal protection claim challenging Defendant Eng's decision, Plaintiffs' equal protection claims extend beyond that. Thus, Plaintiffs contend that the BWS appeal cannot grant Plaintiffs the declaratory, injunctive, and monetary damages sought in the instant case.

As to the IIED claim, Plaintiffs note that Defendants do not deny that their actions were intentional or reckless, and they do not deny that Plaintiffs have suffered emotional distress. Defendants' position is that their conduct was not outrageous. Plaintiffs disagree, and they argue that a jury must decide any dispute on this issue. As to the NIED claim, Plaintiffs argue that public support for MVCV on the building permit dispute indicates that normally constituted people would be deeply disturbed by Defendants' actions. Further, Plaintiffs were particularly sensitive because of their PTSD, and Defendants were aware of this fact. As to the negligence claim, Plaintiffs argue that Mayor Tavares, Defendant Silva, and Defendant Martin repeatedly attempted to prevent Plaintiffs from exercising their First Amendment rights. Their actions occurred in the scope of their employment and breached the applicable standard of conduct. Plaintiffs therefore urge the Court to deny the Motion as to the state law claims and to exercise supplemental jurisdiction over those claims.

## III. **Reply**

In their reply, Defendants first note that Plaintiffs' memorandum in opposition relies on new factual allegations that are neither contained in the Amended Complaint nor supported by proper citations. Defendants argue that the Court should not consider either the new factual allegations or the declarations,

affidavits, and exhibits upon which they are based. Defendants also move to strike the new evidence on the grounds of relevance, lack of foundation, and hearsay. [Reply at 4-5.] Defendants do not construe Plaintiffs' introduction of these materials as an attempt to convert the 12(b)(6) motion into a motion for summary judgment because Plaintiffs have not given notice that they intend to do so, and they have not complied with Local Rule 56.1(a).

Defendants acknowledge that Plaintiffs' offer to further amend the Amended Complaint has narrowed the issues, but Defendants argue that the proposed amendments do not cure all of the defects in the Amended Complaint. Defendants argue that the Amended Complaint alleges that Plaintiffs did in fact exercise their First Amendment rights. Defendants also note that, even if Plaintiffs believed that Mayor Tavares had the authority to withhold MVCV's building permit, that belief is inconsistent with the Maui County Charter. [Reply at 7 (citing Maui County Charter §§ 8-11.5, 14.11.010).] Defendants argue that she was not the final policymaking authority on the issuance of building permits.

As to the IIED claim, Defendants note that they do not need to deny all of the elements of a claim in a Rule 12(b)(6) motion. Defendants state that they will make all of the necessary denials in their answer, if any portion of the Amended Complaint survives the instant Motion. Further, Defendants argue

that the Amended Complaint does not allege that Defendants knew about Plaintiffs' mental health sensitivities before they took the actions in question.

Finally, Defendants argue that the district court cannot grant the relief that Plaintiffs seek because it is not in the business of issuing building permits.

## STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

> Under Rule 12(b)(6), review is generally limited to the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996). However, courts may "consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).

> On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the

> plaintiff pleads factual content that allows the
> court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged."
> <u>Ashcroft v. Iqbal</u>, --- U.S. ----, 129 S. Ct. 1937,
> 1949, 173 L. Ed. 2d 868 (2009). "Threadbare
> recitals of the elements of a cause of action,
> supported by mere conclusory statements, do not
> suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 554,
> 127 S. Ct. 1955).

<u>Hawaii Motorsports Inv., Inc. v. Clayton Group Servs., Inc.</u>, 693

F. Supp. 2d 1192, 1195-96 (D. Hawai`i 2010).

The Court, however, notes that the tenet that the court

must accept as true all of the allegations contained in the

complaint – "is inapplicable to legal conclusions." <u>Iqbal</u>, 129

S. Ct. at 1949. Accordingly, "[t]hreadbare recitals of the

elements of a cause of action, supported by mere conclusory

statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at

555). Rather, "[a] claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw

the reasonable inference that the defendant is liable for the

misconduct alleged." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).

Factual allegations that only permit the court to infer "the mere

possibility of misconduct" do not show that the pleader is

entitled to relief. <u>Id.</u> at 1950.

"Dismissal without leave to amend is improper unless it

is clear that the complaint could not be saved by any amendment."

<u>Harris v. Amgen, Inc.</u>, 573 F.3d 728, 737 (9th Cir. 2009)

(citation and quotation marks omitted). "But courts have

discretion to deny leave to amend a complaint for futility[.]"
<u>Johnson v. Am. Airlines, Inc.</u>, 834 F.2d 721, 724 (9th Cir. 1987)
(citation and quotation marks omitted).

**DISCUSSION**

## I.  <u>Judicial Notice</u>

At the outset, the Court notes that Defendants' Motion
includes, *inter alia*, a Request for Judicial Notice ("RJN") of
certified copies of the following: Maui County Code § 14.11.010,
effective May 4, 2007; Rules 3-1(e) and (f) of DWS's rules; §§ 8-
8.1, 8-8.2, and 8-8.3 of the County's Charter, as revised; and §§
8-11.1, 8-11.2, 8-11.3, and 8-11.4 of the County's Charter, as
revised.  [Motion, RJN & Exhs. A-D.]

The Court may take judicial notice of any fact "not
subject to reasonable dispute in that it is . . . capable of
accurate and ready determination by resort to sources whose
accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).
This Court may take judicial notice at any stage of a case, and
the Court must take judicial notice when a party makes a request
and supplies the necessary information.  Fed. R. Evid. 201(d),
(f).  The contents of the documents that Defendants have
presented can be readily determined through public records, the
accuracy of which cannot reasonably be questioned.  Defendants'
Request for Judicial Notice is therefore GRANTED.

## II.  **Plaintiffs' Concessions**

In their memorandum in opposition to the Motion, Plaintiffs represented that they intended to file a second amended complaint to remove the following: 1) claims against DWS, BWS, and the Planning Department, insofar as they are not subject to suit as separate entities from the County; 2) any claim for injunctive relief against the collection of any tax; 3) claims by Moana Keokuloa, as personal representative of John Keokuloa (Deceased), because of the statute of limitations; and 4) the due process claims.  [Mem. in Opp. at 10.]

The Court therefore DISMISSES the following claims WITHOUT PREJUDICE: all claims against Defendants DWS, BWS, and the Planning Department; all claims brought by Plaintiff Moana Keokuloa, as personal representative of John Keokuloa (Deceased); Counts II and VI; the portion of Count III based on the alleged violation of Plaintiffs' due process rights; the portion of Count VIII based on the imposition of an illegal tax; all portions of Count IX seeking an injunction against the violations described in Counts II, VI, and the excluded portion of Counts III and VIII; and all portions of Count X seeking a declaration that Defendants' conduct described in Counts II, VI, and the excluded portions of Counts III and VIII was illegal or unconstitutional. The Court FINDS that Defendants' Motion is MOOT as to these claims and therefore will not address Defendants' arguments as to

26

these claims.  Further, in light of the fact that Plaintiffs have essentially withdrawn these claims the Court does not address whether or not any of these claims are plausible on their face.

III. **Ripeness**

Although not clearly addressed in the Motion, this Court must first determine whether Plaintiffs' claims related to the denial of MVCV's building permit are ripe because ripeness is an element of jurisdiction,[3] which the Court must determine as of the filing of the action.  <u>Malama Makua v. Rumsfeld</u>, 136 F. Supp. 2d 1155, 1161 (D. Hawai`i 2001) (citing <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.</u>, 528 U.S. 167, 189-91, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)).

> The ripeness doctrine rests, in part, on the Article III requirement that federal courts decide only cases and controversies and in part on prudential concerns.  <u>See</u> <u>Maldonado v. Morales</u>, 556 F.3d 1037, 1044 (9th Cir. 2009), <u>cert. denied</u>, --- U.S. ----, 130 S. Ct. 1139, --- L. Ed. 2d ---- (2010); <u>W. Oil & Gas Ass'n v. Sonoma County</u>, 905 F.2d 1287, 1290 (9th Cir. 1990).  The ripeness inquiry is "intended to 'prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" <u>Maldonado</u>, 556 F.3d at 1044 (quoting <u>Abbott Labs. v. Gardner</u>, 387 U.S. 136, 148, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967), <u>overruled on other grounds by</u> <u>Califano v. Sanders</u>, 430 U.S. 99, 97 S. Ct. 980, 51 L. Ed. 2d 192 (1977)).  To determine whether a case is ripe, "we consider two factors: 'the fitness of the issues for judicial decision,' and 'the hardship to the parties of withholding

---

[3] Ripeness is not at issue as to the claims in Counts I, III, IV, and V, and the portions of Counts IX and X based on the conduct alleged in Counts I, III, IV, and V.

court consideration.'" <u>Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme</u>, 433 F.3d 1199, 1211-12 (9th Cir. 2006) (en banc) (per curiam) (quoting <u>Abbott Labs.</u>, 387 U.S. at 149, 87 S. Ct. 1507). . . .

A question is fit for decision when it can be decided without considering "contingent future events that may or may not occur as anticipated, or indeed may not occur at all." <u>Cardenas v. Anzai</u>, 311 F.3d 929, 934 (9th Cir. 2002) (internal quotation marks omitted); <u>see also</u> <u>United States v. Streich</u>, 560 F.3d 926, 931 (9th Cir.), <u>cert. denied</u>, --- U.S. ----, 130 S. Ct. 320, 175 L. Ed. 2d 211 (2009). "At the same time, a litigant need not 'await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough.'" <u>Id.</u> (quoting <u>18 Unnamed "John Smith" Prisoners v. Meese</u>, 871 F.2d 881, 883 (9th Cir. 1989) (emphasis in <u>Streich</u>)).

<u>Addington v. U.S. Airline Pilots Ass'n</u>, 606 F.3d 1174, 1179 (9th Cir. 2010).

The Building Department has not approved MVCV's building permit for the Veterans Center because DWS has not granted its approval of the application. [Amended Complaint at ¶ 68 (noting that "everyone but DWS" has approved the application).] Thus, the agency action in question is DWS's final decision, via letter dated July 23, 2010, that it would not give its approval for MVCV's building permit application unless MVCV: 1) replaced the four-inch water line on the east side of Kaunakakai Place with an eight-inch water line; and 2) installed a new fire hydrant. Plaintiffs acknowledged that the appeal of this decision to BWS was pending at the time they filed the

28

Amended Complaint. [Id. at ¶¶ 50, 52-53; Exh. 6 (5/11/10 letter to Arthur H. Parr, AIA, from Herbert Chang, Engineering Program Manager, DWS); Exh. 8 (7/23/10 letter to Larry Helm from Jeffrey Eng, Director, DWS, affirming decision in Chang's 5/11/10 letter).] The Court must first determine whether DWS's July 23, 2010 decision is fit for review.

> "[A]gency action is fit for review if the issues presented are purely legal and the regulation at issue is a final agency action." Anchorage v. United States, 980 F.2d 1320, 1323 (9th Cir. 1992) (citations omitted). Courts traditionally take a pragmatic and flexible view of finality. See Abbott Laboratories, 387 U.S. at 149-50, 87 S. Ct. 1507. "The core question is whether the agency has completed its decision making process, and whether the result of that process is one that will directly affect the parties." Franklin v. Massachusetts, 505 U.S. 788, 797, 112 S. Ct. 2767, 120 L. Ed. 2d 636 (1992). We have accordingly looked to the following elements: whether the administrative action is a definitive statement of an agency's position; whether the action has a direct and immediate effect on the complaining parties; whether the action has the status of law; and whether the action requires immediate compliance with its terms. See Mt. Adams Veneer Co. v. United States, 896 F.2d 339, 343 (9th Cir. 1989), see also Anchorage, 980 F.2d at 1323; Ukiah Valley Medical Ctr. v. Fed. Trade Comm'n, 911 F.2d 261, 264 (9th Cir. 1990) ("The general rule is that administrative orders are not final and reviewable 'unless and until they impose an obligation, deny a right, or fix some legal relationship as a consummation of the administrative process.'") (quoting Chicago & S. Air Lines, Inc. v. Waterman S.S. Corp., 333 U.S. 103, 113, 68 S. Ct. 431, 92 L. Ed. 568 (1948)); Sierra Club v. Nuclear Regulatory Comm'n, 825 F.2d 1356, 1362 (9th Cir. 1987) ("We will not entertain a petition where pending administrative proceedings or further agency action might render the case moot and judicial review completely

unnecessary.") (citation omitted).

Ass'n of Am. Med. Colls. v. United States, 217 F.3d 770, 780 (9th Cir. 2000).

Count VII notes that Maui County Code Chapter 14.05 allows for the partial reimbursement to some, but not all, real property owners who are required to upgrade the County's water system as a condition of receiving water service or a building permit. Plaintiffs argue that Chapter 14.05 is "not related to any legitimate government purpose and [has] a disparate impact on [MVCV] and others similarly situated, who are subject to DWS's upgrade requirements but do not receive such reimbursement[,]" and therefore the provision violates Plaintiffs' equal protection rights. [Amended Complaint at ¶ 114.] Plaintiffs allege that, as a result of the requirement that MVCV pay for the upgrade to the County water system as a condition of receiving DWS's approval of its building permit application, MVCV is unable to obtain the building permit, to which it is otherwise entitled to receive. [Id. at ¶ 115.]

Count VIII alleges that the requirement that MVCV upgrade the water line is a retrospective application of law in violation of Haw. Rev. Stat. § 1-3. [Id. at ¶ 117.] Count IX seeks an injunction against the alleged violations of Plaintiffs' equal protection rights and the alleged retrospective application of law. [Id. at ¶ 120.] Count X seeks a declaration that the

County's conduct is illegal and/or unconstitutional. [Id. at ¶¶ 123-24.] Plaintiffs' claims actually raise two separate issues: DWS's requirement that Plaintiffs upgrade the water system; and the fact that MVCV has not been offered partial reimbursement for the required upgrade under Maui County Code Chapter 14.05.

### A. __Reimbursement for Required Upgrades__

The Amended Complaint does not allege that MVCV actually sought reimbursement under Chapter 14.05. Further, Plaintiffs mischaracterize the provision as providing for reimbursement of "some-but not all-real property owners", a distinction which they argue has no legitimate basis. [Id. at ¶ 114.] According to the plain language of the applicable code provisions, however, reimbursement is only available to subdividers.

Maui County Code § 14.05.040.C. provides, in pertinent part: "When a **subdivider** is required to install a larger size main . . . , the department shall reimburse the **subdivider**, as soon as practicable, . . . for the additional costs of the installation over and above the cost of the mains that would have been otherwise required . . . ." (Emphases added.) Maui County Code § 14.05.050 provides, in pertinent part:

> A. If the department's facilities in the area are inadequate, or where departmental facilities are not readily available to serve **a proposed subdivision**, the **subdivider** shall extend a water main from the nearest adequate

> departmental facility. . . .
>
> B.   The **subdivider** shall be reimbursed for the
>      cost of a main extension in accordance with
>      this section. . . .

(Emphases added.)  MVCV is not a subdivider, and therefore it is
not entitled to reimbursement under Chapter 14.05.  The
allegations in the Amended Complaint do not establish that the
County is arbitrarily granting reimbursement to other property
owners who are similarly situated to MVCV.  Thus, to the extent
that Plaintiffs mischaracterize the reimbursement provisions, the
portion of Count VII based on the lack of reimbursement for
MVCV's required water line upgrade fails to allege a plausible
claim for violation of MVCV's equal protection rights.
Similarly, the portions of Count IX and Count X seeking
injunctive and declaratory relief based on the alleged
constitutional violation in Count VII also fail to allege
plausible claims.  The Court therefore GRANTS Defendants' Motion
as to the portions of Counts VII, IX, and X based on the lack of
reimbursement for the water system upgrade, and DISMISSES those
claims WITHOUT PREJUDICE because it may be possible for
Plaintiffs to cure the defects in those claims by amendment.  See
Harris v. Amgen, Inc., 573 F.3d 728, 737 (9th Cir. 2009).

**B.   Upgrade Requirements**

        The remaining portion of Count VII relies upon the
requirement that MVCV upgrade the water system as a condition of
obtaining DWS's approval for its building permit application.

Further, portions of Count VIII, Count IX, and Count X are also based on that portion of Count VII. DWS's decision to require the upgrades is a final and definitive statement of DWS's position, but it is subject to review by BWS, and MVCV's appeal to BWS was pending at the time Plaintiffs filed this action. Thus, DWS's decision did not have the status of law when Plaintiffs filed this action, and DWS's decision did not require any immediate action by MVCV. Further, DWS's decision to require the upgrades is not a purely legal decision. Reviewing the decision would involve review of the factual determination of the sufficiency of the water flow from the existing line to support the proposed Veterans Center. Such a review would involve technical matters that are best left to in the administrative appeal process where BWS can utilize its specialized expertise.

The Court acknowledges that DWS's decision to require the upgrades had a direct and immediate effect on Plaintiffs insofar as, had DWS granted its approval without the upgrades, MVCV apparently would have received its building permit and could have started construction on the Veterans Center. The Court also recognizes Plaintiffs' frustration with the problems that MVCV has encountered in obtaining the building permit. Further, accepting the factual allegations in the Amended Complaint as true for the purposes of this Motion, Plaintiffs have lost opportunities and experienced personal suffering as a result of

the extensive amount of time that the application process has already consumed. Although these factors support a finding that DWS's decision is fit for review, the factors that support a finding that the decision is not fit for review clearly outweigh the factors supporting fitness for review.

The Court therefore FINDS that DWS's July 23, 2010 decision to require upgrades to the water system as a condition of DWS's approval for MVCV's building permit application is not fit for review and therefore, it is not ripe. The Court also FINDS that no amendment could render DWS's decision ripe as of the original filing of this action. See Harris, 573 F.3d at 737. The Court GRANTS Defendants' Motion as to the portions of Counts VII, VIII, IX, and X based on DWS's July 23, 2010 decision, and DISMISSES those claims WITH PREJUDICE.

## IV. **Section 1983 Claims**

Count I alleges a 42 U.S.C. § 1983 claim against the County and Defendants Tavares, Silva, and Martin for deprivation of Plaintiffs' right, under the First and Fourteenth Amendments, to assemble and speak publicly about political issues without fear of reprisal and retribution. [Amended Complaint at ¶ 95.] Count III alleges a claim against the County for failure to train and supervise and/or for the maintenance of unlawful customs and policies. The remaining portion of Count III alleges that the County is responsible for the violation of Plaintiffs' First

Amendment rights by Mayor Tavares, Defendant Silva, and Defendant Martin.  [Id. at ¶¶ 100-05.]

Section 1983 states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . .  to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

In other words, "[t]o state a claim for relief in an action brought under § 1983, [plaintiffs] must establish that they were deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."  Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).

**A.   Count I - First Amendment Claims**

The First Amendment prohibits laws "abridging the freedom of speech, . . . or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."  U.S. Const. amend. I.  The First Amendment is applicable to the states and local governments through the Due Process Clause of the Fourteenth Amendment.  Menotti v. City of Seattle, 409 F.3d 1113, 1140 n.51 (9th Cir. 2005) (citing De Jonge v. Oregon, 299 U.S. 353, 364, 57 S. Ct. 255 (1937) (some citations omitted)).

A plaintiff can state a § 1983 claim for violation of

his First Amendment rights by alleging that the defendant's

conduct "deterred or chilled [the plaintiff's] political speech

and such deterrence was a substantial or motivating factor in

[the defendant's] conduct."  See id. at 1155 (standard to prevail

on a First Amendment claim on summary judgment) (citation and

quotation marks omitted).  This standard requires only that the

defendant "*intended* to interfere with [the plaintiff's] First

Amendment rights."  Mendocino Envtl. Ctr. v. Mendocino Cnty., 192

F.3d 1283, 1300 (9th Cir. 1999) (citation and quotation marks

omitted) (emphasis in original).  Further, actual deterrence is

not required.

> Because it would be unjust to allow a defendant to
> escape liability for a First Amendment violation
> merely because an unusually determined plaintiff
> persists in his protected activity, . . . the
> proper inquiry asks whether an official's acts
> would chill or silence a person of ordinary
> firmness from future First Amendment activities.

Id. (citations, quotation marks, and footnote omitted).

To the extent that Plaintiffs' First Amendment claims

are based on a theory of retaliation,

> Plaintiffs must allege that (1) Plaintiffs engaged
> in constitutionally protected conduct and (2)
> Defendants' conduct was retaliatory.  Defendants
> may rebut Plaintiffs' allegation of a retaliatory
> motive by showing that Defendants would have
> engaged in the same conduct even in the absence of
> Plaintiffs' protected activities.  Mt. Healthy
> City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S.
> 274, 287, 97 S. Ct. 568, 50 L. Ed. 2d 471 (1977);
> Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310,
> 1314-15 (9th Cir. 1989).  Plaintiffs must also
> allege (3) actual injury.  Laird v. Tatum, 408

U.S. 1, 13-14, 92 S. Ct. 2318, 33 L. Ed. 2d 154
(1972).

David v. Baker, 129 Fed. Appx. 358, 360 (9th Cir. 2005).

Plaintiffs allege their claim for violation of "their constitutional rights to assemble and speak publicly, to the media and otherwise, on issues of political concern without fear of reprisal and retribution," against the County and Defendants Tavares, Silva, and Martin. [Amended Complaint at ¶ 95.]

### 1. **Defendants Silva and Martin**

According to the Amended Complaint, Defendants Silva and Martin, on behalf of the Mayor's Office, met with MVCV representatives when they traveled to Maui on July 1, 2010. The First Amendment claims against Defendants Silva and Martin are based on the following specific conduct.

First, Defendants Silva and Martin allegedly tried to keep the MVCV representatives away from the County Building, the intended site of MVCV's protest, by stating that they would only meet with the MVCV representatives at the Maui County Veterans Center in Kahului. Over Silva and Martin's objections, all but three of the MVCV representatives went to the County Building to conduct the protest. Dr. Hafermann, Plaintiff Poepoe, and Mr. Parr met with Defendants Silva and Martin at the Maui County Veterans Center. [Amended Complaint at ¶¶ 79-81.]

Second, during the course of their meeting with Dr. Hafermann, Plaintiff Poepoe, and Mr. Parr, Defendants Silva and

Martin continued to try to stop the protest.  Defendant Silva asked them "to persuade Helm to 'minimize' the protest."  [Id. at ¶ 81.] Defendant Martin also "made veiled threats, wondering aloud, if the dispute became more 'public' and went into 'attack mode,' where [they] would go from there."  [Id.]

Third, Silva represented to them that MVCV's Veterans Center would only be approved if the Maui County Council approved Mayor Tavares' proposal to transfer DWS's decision-making authority for fire protection to the Fire Department.  Although he represented that it was unlikely that any of the Maui County Council members would vote against the proposal, he knew that the council had previously rejected this proposed transfer six times within two years.  [Id. at ¶ 82.]  Dr. Hafermann, Plaintiff Poepoe, and Mr. Parr agreed to this plan, leading the Mayor's Office to announce a settlement.  Plaintiff Helm also announced that the County and MVCV had reached an agreement in principle. Plaintiffs, however, subsequently learned that the agreement was illusory based on the unfavorable terms in the proposed written agreement that the Mayor's Office sent to MVCV and based on the fact that the Water Resources Committee of the County Council declined to transfer DWS's fire protection authority to the Fire Department.  [Id. at ¶¶ 84-86.]  Plaintiffs allege that the deal was a "sham" intended to induce MVCV to stop its protest prematurely because of the detrimental effect it would have on

Mayor Tavares' re-election campaign.  [Id. at ¶ 86.]

Finally, as an alternative to the agreement based on the transfer of fire protection authority, Defendant Silva proposed that MVCV's water line improvements could be included with the construction of a twelve-inch water main by the Department of Land and Natural Resources as part of its harbor improvement projects.  The Mayor's Office knew that many veterans opposed this project, and Plaintiffs speculate that this proposal was intended to buy their support for the project.  Plaintiffs argue that both of Defendant Silva's proposals had political motives that were unrelated to the Property.  [Id. at ¶ 83.]

Based on the allegations in the Amended Complaint, none of these actions rise to the level of conduct that would have chilled a person of ordinary firmness from future First Amendment activities.  See, e.g., White v. Lee, 227 F.3d 1214, 1228-29 (9th Cir. 2000) (conduct including, inter alia, eight-month investigation, interrogation under threat of subpoena, and telling a major metropolitan newspaper that the plaintiffs had "broken the law" would have chilled or silenced a person of ordinary firmness from future First Amendment activities); David v. Baker, 129 Fed. Appx. 358, 361 (9th Cir. 2005) ("[I]ntentional defamation by law enforcement officials in retaliation for First Amendment activities would chill or silence a person of ordinary firmness from future First Amendment activities." (citation and

39

quotation marks omitted)).

The Court also notes that the first, second, and fourth incidents did not actually chill Plaintiffs' First Amendment rights. Defendant Silva's and Defendant Martin's warnings against going to the County Building did not prevent the protest from going forward;[4] and the Amended Complaint does not allege that anything occurred as a result of Defendant Silva's request to minimize the protest or Defendant Martin's musing about what would happen if the protest escalated. Similarly, the Amended Complaint does not allege that anything occurred as a result of Defendant Silva's proposal to include the MVCV water line in the harbor improvement project.

Plaintiffs, however, apparently allege that Defendant Silva's "sham" settlement proposal based on the transfer of fire protection authority chilled their First Amendment rights by falsely inducing them to end the protest prematurely. [Amended Complaint at ¶ 86.] Even assuming, *arguendo*, that Plaintiffs ended the protest earlier than anticipated because of the purported settlement, insofar as Plaintiffs voluntarily ended the protest, they have not alleged a plausible First Amendment claim.

_____

[4] For purposes of this Motion, the Court does not consider Plaintiffs' representation that Plaintiff Poepoe wanted to participate in the protest but the group decided he should stay behind because of his temper and the possibility of trouble with the police. [Mem. in Opp., Helm Aff. at ¶ 36.] These allegations are not included in the Amended Complaint.

40

See, e.g., Coy ex rel. Coy v. Bd. of Educ. of N. Canton City
Schs., 205 F. Supp. 2d 791, 804 (N.D. Ohio 2002) (ruling that the
plaintiffs failed to raise a triable issue of fact on their claim
that school officials chilled a student's exercise of his First
Amendment rights by allegedly seeking to have his website
discontinued because, *inter alia*, the student voluntarily chose
not to repost the website); accord Grendell v. Ohio Supreme
Court, 252 F.3d 828, 835 (6th Cir. 2001) (stating that, where the
plaintiff voluntarily withdrew from cases in which he either
feared unconstitutional sanctions from the Ohio Supreme Court or
felt inhibited by the supreme court's sanctioning power, it did
not "objectively establish an imminent threat that chills
protected activity" (citation omitted)).

　　　　The Court therefore FINDS that Plaintiffs have failed
to state a plausible § 1983 claim against Defendants Silva and
Martin for the violation of Plaintiffs' rights under the First
Amendment, as applied to the County pursuant to the Fourteenth
Amendment.  Defendants' Motion is HEREBY GRANTED as to the
portion of Count I alleging claims against Defendants Silva and
Martin.  Insofar as is arguably possible to save the First
Amendment claims against Defendants Silva and Martin by
amendment, that portion of Count I is DISMISSED WITHOUT
PREJUDICE.

　　　　**2.**　　**Defendant Tavares**

Plaintiffs' First Amendment claim against Defendant Tavares is based on the following conduct: her call to Plaintiff Helm on the night of June 29, 2010; falsely notifying the media, prior to the July 1, 2010 protest, that there was a settlement to prevent the media from covering the protest; and the actions of Defendants Silva and Martin on the day of the protest because they were acting on her behalf.

On the night of June 29, 2010, Mayor Tavares called Plaintiff Helm at his home after 9:00 p.m. The day before, she called him and said that she and the Veterans Council may have come up with a solution to the dispute about MVCV's Veterans Center, but she had to consult with some of the County department heads. She told Plaintiff Helm that either she or Defendant Silva would call him the next day. When Mayor Tavares called Plaintiff Helm on June 29, 2010, however, she did not discuss the proposed solution. Instead she threatened that she would withhold MVCV's building permit unless he wrote a letter of apology for an email that he had written to his psychologist and physician, but which she had seen. In the email, Plaintiff Helm discussed the problems with the building permit process and stated that it had caused him to feel betrayed and have flashbacks of Vietnam. He also likened the problems to treason. In addition to the demand for an apology, Mayor Tavares warned Plaintiff Helm that MVCV would make a lot people angry if it went

through with the planned protest.  In addition, Mayor Tavares
demanded that Plaintiff Helm allow her to speak to his
psychologist and physician, which he agreed to because he felt
pressured by her.  [Id. at ¶¶ 70-73.]  Mayor Tavares spoke with
Dr. Hafermann, Plaintiff Helm's personal physician, on June 30,
2010.  She repeated her demand that Plaintiff Helm apologize for
his email, and she told Dr. Hafermann that MVCV's planned protest
would not help its cause.  In fact, she warned that, if MVCV
proceeded, it "could lose everything."  [Id. at ¶ 76.]  She also
said that, if MVCV sued the County, it would be "harassment".
[Id.]

        In evaluating a First Amendment claim, "courts must
'look through forms to the substance' of government conduct.
Informal measures, such as 'the threat of invoking legal
sanctions and other means of coercion, persuasion, and
intimidation,' can violate the First Amendment . . . ."  White v.
Lee, 227 F.3d 1214, 1228 (9th Cir. 2000) (quoting Bantam Books,
Inc. v. Sullivan, 372 U.S. 58, 67, 83 S. Ct. 631, 9 L. Ed. 2d 584
(1963)).

                    a.    Retaliation

        First, Plaintiff's email that Mayor Tavares addressed
during the June 29, 2010 telephone call was constitutionally
protected speech.  Defendants argue that her response to his
email was appropriate because, *inter alia*, she needed to

"determine whether any County employees were at risk of violence from Helm." [Mem. in Supp. of Motion at 22.] Although not clearly stated, Defendants may be arguing that Plaintiff Helm's June 26, 2010 email was a "true threat" and therefore was not protected speech. A "true threat" is a statement in which "the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." <u>Virginia v. Black</u>, 538 U.S. 343, 359 (2003) (citations omitted). A state may ban "true threats" without violating the First Amendment. <u>Id.</u>

Plaintiff Helm wrote, *inter alia*:

> This 4 year process of getting a building permit
> to build a vet center has taken a toll and
> triggered rewind buttons of vietnam (sic) combat
> and mis-trust toward government, flash back,
> setting up ambushes, high anxiety towards certain
> race (asian) (sic) Eng, Chang Yoshida etc. The
> constant reved up feelings of these episodes has
> affected many service-connected disable (sic)
> Molokai and other veterans mental and physical
> health, including myself, sometimes its (sic) hard
> to keep it together.

[Motion, Decl. of Nancy McPherson, at ¶ 3, Exh. F (email dated 6/26/10 from Paul Laub to various persons including Ms. McPherson, forwarding a message dated 6/26/10 to Dr. Hafermann & Dr. McNamara from Larry Helm).] In addition, the subject line of Mr. Laub's email reads: "Re: JUST IN CASE SHIT HAPPENS". [<u>Id.</u>] Plaintiff Helm's email does not include a subject line. Even attributing that subject to Plaintiff Helm,

his email does not meet the standard for a true threat.  There is no clear expression of an intent to commit an act of violence, particularly because Plaintiff Helm also states that "we are planning a peaceful protest Rally (sic) at Maui county building . . . ." [Id. (emphasis added).]  The Court therefore finds that Plaintiff Helm's email was not a true threat and that the email was constitutionally protected speech.

Mayor Tavares' alleged threat to withhold MVCV's building permit unless Plaintiff Helm apologized for the email was retaliatory.  Plaintiff Helm allegedly suffered actual injury as a result - he "suffered severe physical, mental and emotional consequences as a result of . . . Mayor Tavares's personal, late-night attack on [Plaintiff Helm] in his home" and he was admitted to the emergency room of a local hospital after suffering an anxiety attack over the possibility that Mayor Tavares would continue to target him if she won re-election.  [Amended Complaint at ¶¶ 88, 90.]  In addition, the withholding of the permit would have affected all Plaintiffs and they allege that they have suffered, and continue to suffer, *inter alia*: "insomnia, flashbacks, nightmares, increased anger at the world, feeling threatened and going into 'combat mode', racing thoughts, loss of appetite, withdrawal, increased substance abuse, high blood pressure, feelings of distrust and betrayal, increased depression, and feeling as though they may explode into

violence." [Id. at ¶ 91.]

Defendants contend that the alleged threat does not support a plausible claim because MVCV was not legally entitled to the building permit and because Mayor Tavares did not have the authority to withhold the building permit. The United States Supreme Court, however, has recognized that, even where the government could deny an applicant a benefit for any number of legitimate reasons, the government may not base the denial on a reason that violates the applicant's constitutional rights, such as his First Amendment rights. See Perry v. Sindermann, 408 U.S. 593, 597 (1972), overruled on other grounds, Rust v. Sullivan, 500 U.S. 173 (1991). Further, as the executive officer of the County, who represented to Plaintiff Helm that she was working with several department heads on a resolution to the matter, Mayor Tavares essentially asserted that she could influence, and work cooperatively with, the department heads who had the authority to make decisions regarding MVCV's building permit application. Even if Mayor Tavares did not have the statutory authority to compel the issuance of a building permit, her claim of influence over the process is not so far beyond the scope of her authority so as to escape the characterization of her actions as "under color of law".

> [T]he Supreme Court has made clear that even the
> "[m]isuse of power" possessed by virtue of state
> law is action taken "under color of state law."
> [United States v.] Classic, 313 U.S. [299,] 326,

> 61 S. Ct. 1031 [(1941)]. Thus, "under 'color' of
> law" means "under 'pretense' of law," and "[a]cts
> of officers who undertake to perform their
> official duties are included whether they hew to
> the line of their authority or *overstep it*."
> <u>Screws v. United States</u>, 325 U.S. 91, 111, 65 S.
> Ct. 1031, 89 L. Ed. 1495 (1945) (plurality
> opinion) (emphasis added); <u>accord</u> <u>id.</u> at 115-16,
> 65 S. Ct. 1031 (Rutledge, J., concurring in the
> result).

<u>Dossett v. First State Bank</u>, 399 F.3d 940, 949 (8th Cir. 2005)

(some alterations in original). Mayor Tavares' alleged threat to

withhold MVCV's building permit was close enough to the authority

of her position to qualify as an action under the pretense of

law.

The Court therefore FINDS that Plaintiffs have alleged

a plausible § 1983 claim against Defendant Tavares for First

Amendment retaliation.

### b. <u>Inhibition of Protest</u>

Plaintiffs also allege that, during the June 29, 2010

phone call, Tavares "warned Helm that he better not come to Maui

to protest, or he would make a lot of people angry." [Amended

Complaint at ¶ 72.] As a result of the June 29, 2010 phone call,

Plaintiff Helm authorized Mayor Tavares to speak to his

physician, Dr. Hafermann. Mayor Tavares spoke to Dr. Hafermann

on June 30, 2010, and she warned him that "[i]t would not help

the cause to have a demonstration" and that the veterans "could

lose everything" if they went forward with the protest. [<u>Id.</u> at

¶¶ 73, 76 (quotation marks omitted).] Plaintiffs also allege

47

that, in order to avoid any media coverage of MVCV's protest, Mayor Tavares' office falsely informed the media that the dispute over the Veterans Center had been resolved.  [Id. at ¶ 78.]

Mayor Tavares' threats did not inhibit Plaintiffs from going forward with the protest on July 1, 2010.  Mayor Tavares' actions, however, would have chilled or silenced a person of ordinary firmness from future First Amendment activities.  See Mendocino Envtl. Ctr. v. Mendocino Cnty., 192 F.3d 1283, 1300 (9th Cir. 1999).  Further, the circumstances surrounding the June 29, 2010 phone call constitute circumstantial evidence of Mayor Tavares' intent to inhibit Plaintiffs' speech.  See id. at 1300-01 (stating that "[i]ntent to inhibit speech . . . can be demonstrated either through direct or circumstantial evidence" (citation omitted)).

The Court therefore FINDS that Plaintiffs have alleged a plausible § 1983 claim against Defendant Tavares for inhibition of their First Amendment rights.

### 3.   Qualified Immunity

Defendants also argue that, to the extent that Plaintiffs have alleged plausible claims, the individual defendants are entitled to qualified immunity.

An official is entitled to qualified immunity under § 1983 if the official "'does not violate clearly established statutory or constitutional rights of which a reasonable person

48

would have known.'" <u>Spoklie v. Montana</u>, 411 F.3d 1051, 1060 (9th Cir. 2005) (quoting <u>Jensen v. City of Oxnard</u>, 145 F.3d 1078, 1085 (9th Cir. 1998) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982))).  The Ninth Circuit, however, has clearly stated that "[a] municipality (and its employees sued in their official capacities) may not assert a qualified immunity defense to liability under Section 1983." <u>Hallstrom v. City of Garden City</u>, 991 F.2d 1473, 1482 (9th Cir. 1993) (citations omitted).

Courts use a two-part analysis to determine whether a defendant is entitled to qualified immunity.

> First, we determine whether "[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged show the officer's conduct violated a constitutional right." <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272.  If a constitutional violation is present, we go on to ask "whether the right was clearly established," <u>id.</u>, applying an objective but fact-specific inquiry.  <u>Id.</u> at 202, 121 S. Ct. 2151.  To reject a defense of qualified immunity, we must find that "the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates the right." <u>Saucier</u>, 533 U.S. at 202, 121 S. Ct. 2151; <u>Anderson v. Creighton</u>, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987).  In making this determination, we consider the state of the law at the time of the alleged violation. <u>See</u> <u>Blankenhorn [v. City of Orange]</u>, 485 F.3d [463,] 476 [(2007)]; <u>Sorrels v. McKee</u>, 290 F.3d 965, 970 (9th Cir. 2002).  We also examine the "information possessed" by the officer to determine whether a reasonable official in a particular factual situation should have been on notice that his or her conduct was illegal. <u>Anderson</u>, 483 U.S. at 641, 107 S. Ct. 3034;

> Sorrels, 290 F.3d at 970.  The "subjective
> beliefs" of the actual officer are, of course,
> "irrelevant."  Anderson, 483 U.S. at 641, 107 S.
> Ct. 3034.

Inouye v. Kemna, 504 F.3d 705, 712 (9th Cir. 2007) (alterations

in original).  The Supreme Court has held that, while the

sequence of the Saucier analysis is often appropriate, it is not

mandatory.  See Pearson v. Callahan, 129 S. Ct. 808, 818 (2009).

"The judges of the district courts and the courts of appeals

should be permitted to exercise their sound discretion in

deciding which of the two prongs of the qualified immunity

analysis should be addressed first in light of the circumstances

in the particular case at hand."  Id.

    Insofar as this Court has found that Plaintiffs have

failed to state a plausible § 1983 claim against Defendants Silva

and Martin for violation of their First Amendment rights, this

Court need not address whether Defendants Silva and Martin have

qualified immunity.  As to Defendant Tavares, this Court has

found that Plaintiffs have alleged plausible § 1983 claims for

violation of their First Amendment rights.  Defendants, however,

argue that nothing in the Amended Complaint establishes that, at

the time of the alleged violation, it should have been clear to

Mayor Tavares that her conduct was unlawful under the

circumstances.  Defendants contend that it was reasonable for her

to ask Plaintiff Helm to apologize for the "racial comments and

threats of violence towards members of a 'certain race (asian)'

50

including County employees 'Eng, Chang [and] Yoshida.'" [Mem. in Supp. of Motion at 21.] Defendants also contend that it was "prudent for her to seek advice from Helm's psychiatrist to determine whether any County employees were at risk of violence from Helm." [Id. at 22.] Defendants' arguments are misplaced.

As noted, *supra*, there is no clear expression of an intent to commit any violent act in Plaintiff Helm's email. Further, to the extent that the racial comments in Plaintiff Helm's email about specific County employees may have been offensive to Mayor Tavares or to the employees named in the email, there was well established law at that time prohibiting her from using her authority to respond to that offense. See, e.g., Beck v. City of Upland, 527 F.3d 853, 871 (9th Cir. 2008) ("By 1990, it was "well established . . . that government officials in general . . . may not exercise their authority for personal motives, particularly in response to real or perceived slights to their dignity. Surely anyone who takes an oath of office knows-or should know-that much." (some alterations in original) (citations omitted)). In addition, as noted *supra*, it was also well established at that time that, even if the government has legitimate reasons to deny an application for a government benefit, the government may not deny the application based on a reason that violates the applicant's First Amendment rights. See Perry v. Sindermann, 408 U.S. 593, 597 (1972).

Thus, at the time of the alleged violation, a reasonable government official in Mayor Tavares' factual situation should have known that her conduct was illegal.

This Court therefore FINDS, for purposes of the instant Motion only, that Mayor Tavares is not entitled to qualified immunity from Plaintiffs' claims in Count I.

### 3. **The County**

Plaintiffs also allege Count I against the County, but the Amended Complaint does not specify which of the County's actions are at issue in Count I. Based on the limited discussion of the County's role in Count I, it appears that Plaintiffs premise liability against the County in Count I on the County's responsibility for the actions of Defendants Tavares, Silva, and Martin. [Amended Complaint at ¶¶ 94-97.] The claim against the County in Count I is therefore redundant of the claims against the County in Count III, Plaintiffs' claim against the County pursuant to Monell v. Department of Social Services, 436 U.S. 658 (1978).

Based on the foregoing, the Court HEREBY GRANTS the Motion and DISMISSES Count I as to the County and Defendants Silva and Martin. Insofar as it may be possible to cure the defects through amendment, the dismissals are WITHOUT PREJUDICE. The Court HEREBY DENIES the Motion as to the claims in Count I against Defendant Tavares. The denial of Defendant Tavares'

52

assertion of qualified immunity is WITHOUT PREJUDICE.

**B.  Count III - Monell Claims**

In Count III, Plaintiffs allege that the County caused the deprivation of their First Amendment rights because it: "developed, encouraged, tolerated and approved" of Defendants Tavares', Silva's, and Martin's conduct; [Amended Complaint at ¶ 101;] "allowed Tavares, Silva and Martin to harass, threaten and retaliate against Plaintiffs for exercising their First Amendment rights[;]" [id. at ¶ 102;] failed to train and supervise its officials and employees to prevent them from violating Plaintiffs' First Amendment rights, "establishing a custom and policy of harassment and retaliation;]" [id. at ¶ 103;] and "was deliberately indifferent to and demonstrated a reckless disregard toward the violation of federal constitutional rights which was likely to occur and did occur from its policies and customs, all in violation of Section 1983" [id. at ¶ 104].

This district court has recognized that:

> Local governmental bodies such as the County of Maui are "persons" that may be sued under § 1983. See Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978). However, under § 1983, the County of Maui is only liable for its own actions. The County of Maui is not liable under § 1983 based on respondeat superior liability . . . . Id. at 694. . . .
> Municipal liability under § 1983 may generally be established in one of three ways.
> > First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom

> which constitutes the standard operating procedure of the local governmental entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy. Whether a particular official has final policy-making authority is a question of state law. Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it.
>
> Gillette v. Delmore, 979 F.2d 1342, 1346-47 (9th Cir. 1993) (citations and internal quotations omitted).

Kuster v. Foley, Civ. No. 07-00264 SOM/BMK, 2008 WL 2051594, at *16 (D. Hawai`i May 13, 2008).

### 1. **Alleged *Respondeat Superior* Liability**

The Complaint does not identify any specific actions attributable to the County that form the basis for Plaintiffs' allegations that the County developed, encouraged, tolerated, approved, and allowed Defendant Tavares' conduct.[5] Those portions of Count III fall under the class of *respondeat superior* claims for which the County is not liable. See Monell, 436 U.S. at 694. Those portions of Count III fail to state a claim upon which relief can be granted.

---

[5] The Court does not address the County's alleged liability for Defendants Silva's and Martin's conduct because this Court has previously ruled that Plaintiffs failed to state a plausible § 1983 claim against them for violation of Plaintiffs' First Amendment rights.

## 2. **Failure to Train**

Plaintiffs also allege failure to train and policy and practice claims in Count III. This district court has acknowledged that:

> There are also "limited circumstances in which an allegation of a 'failure to train' can be the basis for liability under § 1983." City of Canton v. Harris, 489 U.S. 378, 387 (1989). "[I]nadequacy of . . . training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officials] come into contact." Id. at 388. In other words, only when a city's "failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. Moreover, for liability to attach to a municipality's failure to train, the lack of training "must be closely related to the ultimate injury." Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001). "In other words, a plaintiff must show that his or her constitutional 'injury would have been avoided' had the governmental entity properly trained its employees." Id.
>
> "Deliberate indifference" occurs when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." City of Canton, 489 U.S. at 390; accord Gregory v. County of Maui, 414 F. Supp. 2d 965, 969 (D. Haw. 2006), aff'd — F.3d ----, 2008 WL 1869007 (9th Cir. Apr. 29, 2008).

Kuster, 2008 WL 2051594, at *16-17 (some alterations in original).

A significant portion of Plaintiffs' case is based on

Mayor Tavares' attempt to prevent MVCV from protesting at the County Building. They allege that they suffered various physical, mental, and emotional harm as a result of their fear of how she might target them or retaliate against them. Construing all allegations in Plaintiffs' favor for purposes of this Motion, if the County had provided some type of training teaching lawful responses to offensive correspondence and prohibiting the inhibition of citizen protests, their injury would arguably have been avoided. The Court, however, cannot say that the County was deliberately indifferent to the need for more or different training for the mayor of the County. The need for such training is not so obvious that the County policymakers can be reasonably said to have been deliberately indifferent for failing to implement the training. The Court therefore finds that Plaintiffs' failure to train claim fails to state claim upon which relief can be granted.

### 3. <u>Custom and Policy</u>

Finally, Plaintiffs allege that the County had a custom and policy of harassment and retaliation. Plaintiffs, however, point to no evidence of the alleged custom and policy except for Defendant Tavares' actions themselves.

> Even in the absence of an official policy or a custom, the Supreme Court has held that "an unconstitutional government policy could be inferred from a single decision taken by the highest officials responsible for setting policy in that area of the government's business." [City

> of St. Louis v.] Praprotnik, 485 U.S. [112,] 123,
> 108 S. Ct. 915 [(1988)]. Under this paradigm,
> however, "[m]unicipal liability attaches only
> where the decisionmaker possesses final authority
> to establish municipal policy with respect to the
> action ordered." Pembaur [v. Cincinnati], 475
> U.S. [469,] 481, 106 S. Ct. 1292 [(1986)].
>     Thus, in order to establish an official
> policy or custom sufficient for Monell liability,
> a plaintiff must show a constitutional right
> violation resulting from (1) an employee acting
> pursuant to an expressly adopted official policy;
> (2) an employee acting pursuant to a longstanding
> practice or custom; or (3) an employee acting as a
> "final policymaker." Webb v. Sloan, 330 F.3d
> 1158, 1164 (9th Cir. 2003); see Ulrich v. City &
> County of San Francisco, 308 F.3d 968, 984-85 (9th
> Cir. 2002); Gillette v. Delmore, 979 F.2d 1342,
> 1346-47 (9th Cir. 1992).

Delia v. City of Rialto, 621 F.3d 1069, 1081-82 (9th Cir. 2010)

(some alterations in original).

Plaintiffs have not identified either an officially

adopted policy or a longstanding practice or custom. As the

mayor, Defendant Tavares was arguably a "final policymaker" at

the time of the alleged violation. Case law, however, requires

that the official be the final policy-making authority with

respect to that action. Pembaur, 475 U.S. at 481. Mayor Tavares

threatened to withhold MVCV's building permit if Plaintiff Helm

failed to apologize for his June 26, 2010 email or if MVCV went

forward with its planned protest. As noted previously, while it

was not unreasonable for Plaintiffs to have believed that Mayor

Tavares could have influenced the building permit decision, she

was not the final decision-making authority on the issuance of

building permits.  Plaintiffs have not presented any evidence to contradict the code provision that Defendants have identified on this issue.  Plaintiffs therefore have failed to state a plausible claim for Monell liability based on the County's alleged custom and policy.

Based on the foregoing, the Court HEREBY GRANTS the Motion and DISMISSES Count III WITHOUT PREJUDICE because it may be possible to cure the defects in this claim through amendment.

C.  **Punitive Damages**

Plaintiffs seek punitive damages against the County for its role in the violation of their First Amendment rights.[6] [Amended Complaint at ¶ 97.]  Defendants argue that both the United States Supreme Court and the Hawai`i Supreme Court have held that a municipality is not liable for punitive damages.[7] [Mem. in Supp. of Motion at 25 (citing Newport v. Facts Concerts, Inc., 453 U.S. 247 (1981) (municipality is immune from punitive damages under 42 U.S.C. § 1983); Lauer v. Young Men's Christian Assoc., 57 Haw. 390, 557 P.2d 1334 (1976) (municipalities cannot be liable under common law for punitive or exemplary damages)).]

---

[6] The Court notes that there appears to a conflict within the Amended Complaint, because Plaintiffs' prayer for relief expressly states that they seek punitive damages from the individual defendants.  [Amended Complaint at pg. 46.]

[7] The Court notes that Defendants apparently do not contest that Plaintiffs may seek punitive damages against the individual defendants, to the extent that Plaintiffs can establish entitlement to such damages.

This Court agrees with Defendants' summary of the law on this issue. The Motion is therefore GRANTED as to Plaintiffs' prayer for punitive damages against the County, and the Court DISMISSES Plaintiffs' request for punitive damages against the County WITH PREJUDICE.

**V.   State Law Claims**

Insofar as the Court has found that some of Plaintiffs' federal claims survive the instant Motion, the Court also has supplemental jurisdiction over any of Plaintiffs' state law claims that survive the Motion.   See 28 U.S.C. § 1367(a).

Count IV alleges a claim for IIED and NIED against the County and Defendants Tavares, Silva, and Martin, and Count V alleges a negligence claim against all individual defendants.

**A.   IIED**

Under Hawai`i law, there are four elements of an IIED claim. First, the plaintiff must prove that the conduct was either intentional or reckless. Second, the conduct in question must have been "outrageous." Next, the plaintiff must establish causation, and finally, there must be evidence that the plaintiff suffered extreme emotional distress. See Young v. Allstate Ins. Co., 119 Hawai`i 403, 425, 198 P.3d 666, 688 (2008) (citations omitted). Hawai`i courts have defined outrageous conduct as conduct "without just cause or excuse and beyond all bounds of decency." Lee v. Aiu, 85 Hawai`i 19, 34 n.12, 936 P.2d 655, 670

n.12 (1997) (citation and quotation marks omitted).  Extreme

emotional distress constitutes "mental suffering, mental anguish,

nervous shock, and other highly unpleasant mental reactions."

Enoka v. AIG Haw. Ins. Co., 109 Hawai`i 537, 559, 128 P.3d 850,

872 (2006) (citation and internal quotations omitted).

　　　　The factual allegations in the Amended Complaint, which

the Court assumes are true for purposes of this Motion, satisfy

the first, third, and fourth elements of an IIED claim.

Defendants argue that Plaintiffs have failed to state an IIED

claim because the alleged actions of Defendants Tavares, Silva,

and Martin do not constitute outrageous conduct.

　　　　This district court has recognized that:

> An IIED claim cannot be sustained by
> "threats, annoyances, petty oppressions, or other
> trivialities."  Young v. Allstate Ins. Co., 119
> Haw. 403, 425, 198 P.3d 666, 688 (2008) (quoting
> Restatement (Second) of Torts § 46 cmt. d); see
> also Bragalone v. Kona Coast Resort Joint Venture,
> 866 F. Supp. 1285, 1294 (D. Haw. 1994).  Indeed, a
> plaintiff "must necessarily be expected and
> required to be hardened to a certain amount of
> rough language, and to occasional acts that are
> definitely inconsiderate and unkind."  Restatement
> (Second) of Torts § 46 cmt. d.  With that said,
> however, "sexually harassing behavior, racial
> slurs, and accusations of criminal conduct could
> all possibly be considered outrageous conduct,"
> see Nagata [v. Quest Diagnostics Inc.], 303 F.
> Supp. 2d [1121,] 1128 [(D. Hawai`i 2004)], and
> conduct that does not fit into any of these
> categories may still raise a question of fact.
> Cf. id. (determining that defendant's delay in
> disclosing error in drug test could be considered
> outrageous).

Angel v. Wal-Mart Stores, Inc., Civil No. 09-00361 JMS/KSC, 2010

WL 3951997, at *10 (D. Hawai`i Oct. 6, 2010).  In light of these principles, and for the reasons discussed *supra* in Sections IV.A.1. and 2., the Court finds that Plaintiffs have failed to allege conduct by Defendants Silva and Martin that would be considered outrageous under Hawai`i law, but Plaintiffs have alleged conduct by Defendant Tavares in the course of her June 29, 2010 telephone call to Plaintiff Helm that may satisfy the outrageousness standard.  The Court therefore FINDS that Plaintiff Helm has alleged a plausible IIED claim against Defendant Tavares, but the remaining Plaintiffs have failed to allege a plausible claim against Defendant Tavares, and all Plaintiffs have failed to allege a plausible IIED claim against Defendants Silva and Martin.

Plaintiffs' IIED claim against the County appears to be based on respondeat superior.  Hawai`i law recognizes *respondeat superior* liability, and therefore an employer may be liable for its employees' negligent acts if they occur within the scope of employment.  See Wong-Leong v. Hawaiian Indep. Refinery, Inc., 76 Hawai`i 433, 438, 879 P.2d 538, 543 (1994) (citations omitted). The Amended Complaint contains sufficient allegations to state a plausible claim by Plaintiff Helm against the County because Defendant Tavares' actions allegedly occurred within the scope of her employment.

Based on the foregoing, the Court HEREBY GRANTS the

Motion and DISMISSES Plaintiffs' IIED claim as to Defendants Silva and Martin WITHOUT PREJUDICE; DENIES the Motion as to Plaintiff Helm's IIED claim against Defendant Tavares and the County; and GRANTS the Motion and DISMISSES the remaining Plaintiffs' IIED claim against Defendant Tavares and the County WITHOUT PREJUDICE.

**B. Negligence**

Count V alleges a negligence claim against all individual Defendants.[8]

> "Under common law, a person who has sustained injuries due to the negligent conduct of another may recover against the tortfeasor provided that the negligent behavior was the proximate cause of the injuries suffered." Ono v. Applegate, 62 Haw. 131, 137, 612 P.2d 533, 538 (Haw. 1980) (citing Fujioka v. Kam, 55 Haw. 7, 10, 514 P.2d 568, 570 (Haw. 1973); Restatement (Second) of Torts § 281 (1965)). A successful negligence claim must satisfy the following four elements:
>> 1. A duty, or obligation, recognized by the law, requiring the actor to conform to a certain standard of conduct, for the protection of others against unreasonable risks.
>> 2. A failure on [the actor's] part to conform to the standard required. . . .
>> 3. A reasonable close causal connection between the conduct and the resulting injury. . . .
>> 4. Actual loss or damage resulting to the interests of another. . . .

---

[8] Plaintiffs assert that their common law negligence claim includes the tort of negligent training and supervision. [Mem. in Opp. at 28.] The Court, however, notes that Plaintiffs only allege their negligence claim against the individual defendants and not against the County. [Amended Complaint at ¶ 108.]

Ono, 62 Haw. at 137, 612 P.2d at 538-39.

White v. Sabatino, 415 F. Supp. 2d 1163, 1173 (D. Hawai`i 2006) (alterations in original).

Hawai`i law recognizes a general duty requiring government employees to carry out their official duties as prescribed by the applicable laws and rules and in the exercise of due care.  See, e.g., Upchurch v. State, 51 Haw. 150, 154, 454 P.2d 112, 115 (1969) ("[I]f the acts of negligence alleged and proven were the failure of employees to carry out their duties as prescribed by the rules, or their failure to exercise due care in the performance of their duties, such acts or omissions would . . . be actionable under the State Tort Liability Act.").

### 1.  **Defendants Eng & Yoshida**

First, Plaintiffs' claims against Defendants Eng and Yoshida all relate to the alleged due process and equal protection violations associated with the building permit application process.  This Court has previously dismissed those claims.  See supra Discussion Sections II., III.  For the same reasons, the Court also GRANTS the Motion as to Plaintiffs' negligence claim against Defendants Eng and Yoshida and DISMISSES that portion of Count V WITHOUT PREJUDICE.

### 2.  **Defendants Silva and Martin**

Defendants Silva and Martin allegedly tried to stop the MVCV protest from going forward by trying to keep the veterans

away from the County Building and trying to persuade the MVCV representatives who met with them during the protest to convince Plaintiff Helm to minimize the protest. Plaintiffs also allege that the proposed settlement that Defendant Silva suggested was a sham and that it falsely induced Plaintiffs to end the protest prematurely because they believed they had a settlement with the County. [Mem. in Opp. at 12.] Defendants Silva's and Martin's attempts to keep the veterans away from the County Building and to convince the representatives to persuade Plaintiff Helm to minimize the protest were not successful. Plaintiffs suffered no actual loss or damages as a result of that conduct and therefore cannot state a plausible negligence claim based on that conduct.

In their memorandum in opposition, Plaintiffs allege that, "[w]hen Silva and Martin, at Tavares's behest, repeatedly assured Plaintiffs that MVCV would receive its building permit, Plaintiffs agreed to call off their protest." [Id.] The Amended Complaint, however, does not contain this allegation. It states only that, "[h]earing what the Molokai Veterans thought was good news [about the settlement], Helm joined in announcing an agreement in principle." [Amended Complaint at ¶ 85.] The Amended Complaint does not allege that the protest would have continued longer than it did if it not for the purported settlement. The Amended Complaint also states that MVCV ultimately refused to sign the written settlement agreement that

the County sent MVCV.  [Id.]  Plaintiffs therefore have failed to allege any injury or damage that they suffered as a result of Defendant Silva's proposal of the "sham" settlement agreement. For the reasons discussed *supra* in Section IV.A.1., the Court finds that Plaintiffs have failed to allege conduct by Defendants Silva and Martin that breached the applicable standard of conduct with regard to their official duties.  The Court therefore FINDS that Plaintiffs have failed to allege a plausible negligence claim against Defendants Silva and Martin.  The Court GRANTS the Motion as to Plaintiffs' negligence claim against Defendants Silva and Martin and DISMISSES that claim WITHOUT PREJUDICE.

### 3. **Defendant Tavares**

For the reasons discussed *supra* in Sections IV.A.2. and V.A., the Court also FINDS that Plaintiffs have alleged conduct by Defendant Tavares in the course of the June 29, 2010 telephone call to Plaintiff Helm that would support a plausible negligence claim against her.  Insofar as Plaintiff Helm was the only Plaintiff who participated in that phone call, only Plaintiff Helm has standing to pursue that claim.  The Court therefore DENIES the Motion as to Plaintiff Helm's negligence claim against Defendant Tavares and GRANTS the Motion as to the remaining Plaintiffs' negligence claim against Defendant Tavares and DISMISSES those Plaintiffs' negligence claim WITHOUT PREJUDICE.

### C. **NIED**

Hawai`i law recognizes an independent cause of action for negligent infliction of emotional distress or NIED. The elements of that claim are:

> (1) that the defendant engaged in negligent conduct; (2) that the plaintiff suffered serious emotional distress; and (3) that such negligent conduct of the defendant was a legal cause of the serious emotional distress. <u>Tran v. State Farm Mut. Automobile Ins. Co.</u>, 999 F. Supp. 1369, 1375 (D. Haw. 1998). A cognizable claim for NIED under Hawaii law also "requires physical injury to either a person or property," <u>see</u> <u>Calleon v. Miyagi</u>, 76 Haw. 310, 320, 876 F.2d 1278 (1994), or a mental illness, <u>see</u> Haw. Rev. Stat. § 663-8.9.

<u>Dowkin v. Honolulu Police Dep't</u>, Civ. No. 10-00087 SOM-LEK, 2010 WL 4961135, at *9 (D. Hawai`i Nov. 30, 2010).

Insofar as this Court has found that Plaintiffs have failed to allege a plausible negligence claim against Defendants Silva and Martin and all Plaintiffs except Plaintiff Helm have failed to allege a plausible negligence claim against Defendant Tavares and the County, Plaintiffs have also failed to allege a plausible NIED claim against Defendants Silva and Martin, and all Plaintiffs except for Plaintiff Helm have also failed to allege a plausible NIED claim against Defendant Tavares. Insofar as the County's liability for NIED appears to be based on *respondeat superior*, the aforementioned Plaintiffs also fail to state a plausible NIED claim against the County.

This Court has found that Plaintiff Helm alleged a plausible negligence claim against Defendant Tavares. Further,

66

Plaintiff Helm has alleged that he has suffered serious emotional distress that resulted in physical injury, and he has alleged that Defendant Tavares' negligence was the cause of his serious emotional distress. The Court therefore FINDS that Plaintiff Helm has alleged a plausible claim for NIED against Defendant Tavares. The Amended Complaint also contains sufficient allegations to state a plausible NIED claim by Plaintiff Helm against the County because Defendant Tavares' actions allegedly occurred within the scope of her employment.

Based on the foregoing, the Court HEREBY GRANTS Defendants' Motion as to Plaintiffs' NIED claim against Defendants Silva and Martin; DISMISSES Plaintiffs' NIED claim against Defendants Silva and Martin WITHOUT PREJUDICE; DENIES Defendants' Motion as to Plaintiff Helm's NIED claim against Defendant Tavares and the County; GRANTS Defendants' Motion as to the remaining Plaintiffs' NIED claim against Defendant Tavares and the County; and DISMISSES the remaining Plaintiffs' NIED claim against Defendant Tavares and the County WITHOUT PREJUDICE.

## VI. <u>Injunctive Relief</u>

The remaining portions of Count IX seek injunctive relief against future violations of Plaintiffs' constitutional rights. The only claim for constitutional violations that survives Defendants' Motion is Plaintiffs' First Amendment claim against Defendant Tavares. According to the facts alleged in the

Amended Complaint, Defendant Tavares' conduct incurred in the scope of her employment as mayor of the County of Maui. Defendant Tavares, however, is no longer the mayor. Thus, Plaintiffs cannot allege any on-going threat of constitution violations from Defendant Tavares' exercise of her mayoral duties. Defendants' Motion is therefore GRANTED as to Plaintiffs' claim for injunctive relief against future constitutional violations, and the Court DISMISSES that claim. The dismissal is WITH PREJUDICE as to Defendant Tavares and WITHOUT PREJUDICE as to the remaining Defendants.

## VII. **Declaratory Relief**

The remaining portions of Count X seek a declaration that Defendants' conduct was illegal or unconstitutional. The Court therefore GRANTS Defendants' Motion, and DISMISSES the portion of Count X to the extent that it seeks a declaration regarding the claims that this Court previously dismissed in this Order. The dismissal is WITHOUT PREJUDICE. The Court DENIES Defendants' Motion as to Count X to the extent that it seeks a declaration regarding the claims that survive Defendants' Motion.

## VIII. **Dismissal Without Prejudice**

To the extent that this Court has dismissed some of Plaintiffs' claims without prejudice, Plaintiffs may seek to file a Second Amended Complaint to correct the defects identified in this Order. The deadline to add parties and amend pleadings was

March 24, 2011.  [Rule 16 Scheduling Order, filed 12/21/10 (dkt.
no. 9), at 2.]  The Court therefore GRANTS Plaintiffs until
**May 20, 2011** to file a motion for leave to file a Second Amended
Complaint.  Although this Court has dismissed some of Plaintiffs'
claims without prejudice, the magistrate judge may deny leave to
amend if the proposed amended claims are still futile.

## CONCLUSION

On the basis of the foregoing, Defendants' Motion to
Dismiss Amended Complaint for Injunctive and Declaratory Relief
and Damages Filed November 24, 2010, or, in the Alternative, for
a More Definite Statement, filed January 4, 2011, is HEREBY
GRANTED IN PART AND DENIED IN PART.  Specifically, the Court
rules has as follows:

- All claims against Defendants Department of Water Supply, Board
  of Water Supply, and the Planning Department are DISMISSED
  WITHOUT PREJUDICE.
- All claims brought by Plaintiff Moana Keokuloa, as personal
  representative of John Keokuloa (Deceased), are DISMISSED
  WITHOUT PREJUDICE.
- Any prayer for punitive damages from Defendant County of Maui is
  DISMISSED WITH PREJUDICE.
- The claims in Count I against Defendants Roy Silva and Mahina
  Martin and the County of Maui are DISMISSED WITHOUT
  PREJUDICE.  Plaintiffs' claims in Count I against Defendant
  Charmaine Tavares remain.  Defendant Tavares' assertion of
  qualified immunity is DENIED WITHOUT PREJUDICE.
- Count II is DISMISSED WITHOUT PREJUDICE.
- Count III is DISMISSED WITHOUT PREJUDICE.
- Plaintiffs' IIED/NIED claim against Defendants Martin and Silva
  in Count IV is DISMISSED WITHOUT PREJUDICE; Plaintiff
  Hilarion Helm's IIED/NIED claim against Defendant Tavares
  and the County remain; all other Plaintiffs' IIED/NIED
  claims against Defendant Tavares and the County are
  DISMISSED WITHOUT PREJUDICE.
- Plaintiffs' negligence claim against Defendants Jeffrey K. Eng,

Clayton Yoshida, Martin, and Silva in Count V is DISMISSED
WITHOUT PREJUDICE.  Plaintiff Helm's negligence claim
against Defendant Tavares remains; all other Plaintiffs'
negligence claim against Defendant Tavares is DISMISSED
WITHOUT PREJUDICE.

- Count VI is DISMISSED WITHOUT PREJUDICE;
- The portion of Count VII based on the lack of reimbursement for
required improvements to the County water system is
DISMISSED WITHOUT PREJUDICE; the portion of Count VII based
on the DWS's July 23, 2010 decision is DISMISSED WITH
PREJUDICE.
- The portion of Count VIII based on the imposition of an illegal
tax is DISMISSED WITHOUT PREJUDICE; the portion of Count
VIII based on the DWS's July 23, 2010 decision is DISMISSED
WITH PREJUDICE.
- The portions of Count IX seeking an injunction against the
violations described in Counts II, VI, and the excluded
portion of Counts III and VIII are DISMISSED WITHOUT
PREJUDICE; the portion of Count IX based on the lack of
reimbursement for required improvements to the County water
system is DISMISSED WITHOUT PREJUDICE; the portion of Count
IX based on the DWS's July 23, 2010 decision is DISMISSED
WITH PREJUDICE; the portion of Count IX based on the threat
of future constitutional violations by Defendant Tavares is
DISMISSED WITH PREJUDICE; and the portion of Count IX based
on the threat of future constitutional violations by the
other individual Defendants is DISMISSED WITHOUT PREJUDICE.
- The portions of Count X seeking a declaration that Defendants'
conduct described in Counts II, VI, and the excluded
portions of Counts III and VIII was illegal or
unconstitutional are DISMISSED WITHOUT PREJUDICE; the
portion of Count X based on the lack of reimbursement for
required improvements to the County water system is
DISMISSED WITHOUT PREJUDICE; the portions of Count X
regarding the substantive claims that this Court has
dismissed are DISMISSED WITHOUT PREJUDICE; the portions of
Count X regarding the substantive claims that this Court has
not dismissed remain.

Any portions of the Amended Complaint not specifically named

above are DISMISSED WITHOUT PREJUDICE.  The Court GRANTS

Plaintiffs leave to file a motion to amend their complaint,

according to the terms of this Order.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, April 28, 2011.



　 /S/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

MOLOKAI VETERANS CARING FOR VETERANS, ET AL. V. COUNTY OF MAUI,
ET AL; CIVIL NO. 10-00538 LEK-RLP; ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT
FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES FILED
NOVEMBER 24, 2010, OR, IN THE ALTERNATIVE, OR A MORE DEFINITE
STATEMENT